11-5369-cv(L)
Janese v. Fay

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2011

Heard: June 26, 2012      Decided: August 27, 2012

Docket Nos. 11-5369-cv(L), 12-80-cv(XAP)

- - - - - - - - - - - - - - - - - - - - - - - -

Douglas A. Janese, Christopher V. Shakarjian, Louis D'Aurizio, as representatives of the participants and beneficiaries of the former Niagara Genesee & Vicinity Carpenters Local 280 Pension and Welfare Funds,

Plaintiffs-Appellants-Cross-Appellees,

v.

David A. Fay, Angelo Massaro, Dominic P. Massaro, George R. Weidert, Christopher M Scrufari, David J. Knapp, Trustees of the Niagara-Genesee & Vicinity Carpenters Local 280 Pension and Welfare Funds from 1994 through 1998, and John J. Fuchs, Patrick Morin, John J. Simmons, Trustees of the Niagara-Genesee & Vicinity Carpenters Local 280 Pension and Welfare Funds from 2006 through 2008, and Gordon J. Knapp, Robert P. Williams, Thomas P. Hartz, Trustees of the Niagara-Genesee & Vicinity Carpenters Local 280 Pension and Welfare Funds in 2000, and Santo S. Scrufari, Russell P. Scrufari, Plan Managers of the Niagara-Genesee & Vicinity Carpenters Local 280 Pension and Welfare Funds, and Empire State Carpenters Welfare Fund, Empire State Carpenters Pension Fund,

Defendants-Appellees-Cross-Appellants.
- - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, WINTER, and POOLER, Circuit Judges.

Appeal from the May 2, 2011, judgment of the United States District Court for the Western District of New York (John T. Curtin, District Judge), dismissing as time-barred a complaint brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001 et seq. The Appellants challenge the time-bar rulings; the Appellees challenge, in light of subsequent Supreme Court decisions, the continuing validity of our opinions in Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032 (2d Cir. 1985), and Siskind v. Sperry Retirement Program, Unisys, 47 F.3d 498 (2d Cir. 1995), which stated that trustees of a pension plan act as fiduciaries when they amend the plan.

Affirmed in part, vacated in part, and remanded; cross-appeal dismissed as unnecessary.

Timothy Alan McCarthy, Buffalo, N.Y. (Burd & McCarthy, Buffalo, N.Y., on the brief), for Appellants-Cross-Appellees.

Jeffrey S. Swyers, Washington, D.C. (Allison A. Madan, Slevin & Hart, P.C., Washington, D.C.; Robert L. Boreanaz, Lipsitz Green Scime Cambria LLP, Buffalo, N.Y., on the brief), for Appellees-Cross-Appellants.

JON O. NEWMAN, Circuit Judge:

This appeal and a purported cross-appeal primarily concern two issues arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The first issue is whether trustees of a multi-employer pension fund act as fiduciaries when they amend the pension plan. The second issue is whether the claims asserted in this case are time-barred. These issues arise on an appeal by present and former beneficiaries of the former Niagara-

Genesee & Vicinity Carpenters Local 280 Pension and Welfare Funds[1] from the May 2, 2011, judgment of the District Court for the Western District of New York (John T. Curtin, District Judge) dismissing their complaint against present and former trustees and plan managers of the Funds. The Plaintiffs-Appellants also appeal from the December 1, 2011, order denying their motion for reconsideration and for leave to amend. By a purported cross-appeal, the Defendants-Appellees seek to appeal that part of the District Court's October 22, 2010, order that had denied dismissal of Counts I-V of the Complaint for failure to state a claim on which relief could be granted; these counts were subsequently dismissed as time-barred.

We conclude that dismissal of Counts I-V was proper because the trustees were not acting as fiduciaries in amending the Plan, and in reaching that conclusion, we deem the contrary rulings of our Court in Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032 (2d Cir. 1985), and Siskind v. Sperry Retirement Program, Unisys, 47 F.3d 498 (2d Cir. 1995), to have been abrogated by subsequent decisions of the Supreme Court.[2] We also conclude that fact issues remain as to whether Counts VII-IX were properly dismissed as time-barred. The dismissal of Count VI is not challenged on appeal. On the appeal, we

---

[1]The Funds merged into the Empire State Carpenters Pension and Welfare Funds, effective January 1, 2008.

[2]This opinion has been circulated to the active judges of the Court prior to filing.

therefore affirm in part, vacate in part, and remand. We dismiss the cross-appeal as unnecessary.

Background

The parties. This is a derivative action brought on behalf of the participants and beneficiaries of the Funds seeking to recover assets that the Plaintiffs-Appellants assert were wrongfully depleted by the Defendants-Appellees in violation of their fiduciary duties. The Defendants-Appellees are present and former trustees or plan managers of the Funds. The Complaint divides the trustees into four separate groups, based on whether they served as trustees during the following periods: (1) July 13, 2000 to December 31, 2007; (2) January 26, 1999 to July 12, 2000 (the "2000 trustees"); (3) January 20, 1994 to January 25, 1999 (the "1994-98 trustees"); and (4) November 1993 to January 19, 1994.[3] The two plan managers are Santo Scrufari, who served from 1985 to July 14, 1996, and his son Russell, who succeeded his father and served until December 31, 2008.

The allegations in the Complaint. The Complaint asserted nine counts of breach of fiduciary duty, eight of which are at issue in this appeal. Counts I-V alleged various plan amendments that are claimed to have breached the trustees' fiduciary duties. Count VI alleged an increase in the monthly retirement benefit for a retired trustee, accomplished with a plan amendment. The dismissal of this count is not challenged on appeal.

---

[3]Some defendants are members of multiple groups.

Count VII alleged that, from 1993 to July 14, 1996, Santo Scrufari manipulated Pension Fund calculations in order to grant himself and one trustee higher pay-outs than they were owed under the Fund Plan. He concealed this from the other trustees by altering the relevant pension credit records. Count VII further asserted that the 1994-98 trustees breached their fiduciary duties by failing to adequately monitor Scrufari. Counts VIII-IX alleged that the Scrufaris and their associates stole money from the Welfare Fund over a number of years, fraudulently concealed these withdrawals by labeling them "Scholarship" or "Health Care" benefits, and failed to pay taxes on these withdrawals. Like Count VII, Counts VIII and IX further asserted that the 1994-98 trustees and the 2000 trustees failed to adequately monitor the Scrufaris.

Prior litigation involving Santo Scrufari. In 2006, Santo Scrufari was found liable for a number of breaches of fiduciary duty, including improper weighting of his fringe benefits, during the period between March 1989 and October 1992. See LaScala v. Scrufari, No. 93-CV-982C(F), 2006 WL 469404, at *1 (W.D.N.Y. Feb. 27, 2006), rev'd, 479 F.3d 213 (2d Cir. 2007), on remand, 2010 WL 475284, at *1 (W.D.N.Y. Feb. 5, 2010). That suit did not consider Scrufari's activities after October 1992. See LaScala, 2006 WL 469404 at *1.

Procedural history of the pending suit. The Plaintiffs filed the present action on June 26, 2009. They assert that they became aware of the Defendants' illegal activities after September 20, 2007, when damages discovery in the LaScala case revealed incriminating

documents. The Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), principally asserting that the Plaintiffs' claims were time-barred under section 413 of ERISA, 29 U.S.C. § 1113 (as amended). The District Court granted the motion as to all pertinent claims on that basis but rejected the Defendants' alternative claim that Counts I-V did not allege actions that fell within the scope of ERISA's fiduciary duty statute.

Following entry of judgment, the Plaintiffs moved for reconsideration of the District Court's order and for leave to amend the complaint to allege fraud with greater particularity. The District Court denied the motion for reconsideration, rendering the motion to amend moot. See National Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir. 1991) ("[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b).") (internal quotation marks and citation omitted).

Discussion

I. Whether Trustees Act as Fiduciaries in Amending a Plan

We consider first the contention of the Appellees that the dismissal of Counts I-V should be affirmed on the ground that the actions challenged in those counts were pension plan amendments, which are not fiduciary actions and therefore do not violate section 404(a)(1) of ERISA. Initially, we note that the Appellees took the unnecessary step of filing a cross-appeal to assert this contention. An appellee needs to file a cross-appeal only to request an appellate court to grant some additional relief beyond the judgment entered by

a district court. See Carlson v. Principal Financial Group, 320 F.3d 301, 309 (2d Cir. 2003). In the absence of a cross-appeal, an appellee is entitled to seek affirmance on any ground supportable by the record. See Bruh v. Bessemer Venture Partners III L.P., 464 F.3d 202, 205 (2d Cir. 2006) ("[W]e may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the district court."). For this reason, we will dismiss the cross-appeal as unnecessary, but nonetheless consider the contention that the Appellees have advanced in support of the District Court's judgment.

In 1985, this Court ruled that, with respect to multi-employer pension plans, the act of amending a plan should be treated as a fiduciary function, see Chambless, 772 F.2d at 1040, thereby invoking section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), which obliges a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." Ten years later we ruled that amending a single employer pension plan was not a fiduciary function, pointedly distinguishing Chambless on the ground that "[i]n the multi-employer setting, trustees amending a pension plan 'affect the allocation of a finite plan asset pool' to which each participating employer has contributed." See Siskind, 47 F.3d at 506 (quoting Musto v. American General Corp., 861 F.2d 897, 912 (6th Cir. 1988)). The Appellees contend that the ruling in Chambless and the language in Siskind distinguishing multi-employer plans has been abrogated by the combined effect of three decisions of the Supreme Court: Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73 (1995);

_Lockheed Corp. v. Spink_, 517 U.S. 882 (1996), and _Hughes Aircraft Co. v. Jacobson_, 525 U.S. 432 (1999). The Appellants respond that the _Chambless_/_Siskind_ view of multi-employer plans has survived the later Supreme Court decisions.

Resolving this dispute involves consideration of the deference a court of appeals owes to language in Supreme Court opinions that contributes to the Court's reasoning, even if it does not incorporate a precise holding. See generally Pierre N. Leval, _Judging Under the Constitution: Dicta about Dicta_, 81 N.Y.U. L. Rev. 1249 (2006) Initially, we note that _Curtiss-Wright_, _Lockheed Corp._, and _Hughes Aircraft_ all involved single employer plans. Thus, the Supreme Court had no occasion to rule definitively on whether amending a multi-employer plan was a fiduciary function. Nevertheless, we need to consider carefully what the Supreme Court said in deciding those cases.

In _Curtiss-Wright_, which involved a welfare plan, the Court said, "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, _modify_, or terminate welfare plans." 514 U.S. at 78 (emphasis added). _Lockheed Corp._ involved a pension benefit plan. The Court said, "We see no reason why the rule of _Curtiss-Wright_ should not be extended to pension benefit plans." 517 U.S. at 890. The Court also declared, "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." Id. _Hughes Aircraft_ concerned a pension plan to which employees were required to contribute. The Ninth Circuit had thought that this circumstance distinguished _Lockheed Corp._ and concluded that an

-8-

amendment to such a plan was subject to ERISA's fiduciary standards. See Jacobson v. Hughes Aircraft Co. , 105 F.3d 1288, 1293 (9th Cir. 1997) ("[T]the asset surplus that was used in Lockheed to fund the early retirement program was attributable only to employer contributions. Here, plaintiffs allege that the asset surplus Hughes used to fund the early retirement program and the new Non-Contributory Plan was attributable to both employer and employee contributions"). The Supreme Court disagreed. "Our conclusion [in Lockheed Corp.] applies with equal force to persons exercising authority over a contributory plan, a noncontributory plan, or any other type of plan." Hughes Aircraft, 525 U.S. at 443-44. And, the Court added emphatically, the fiduciary duty claims "are directly foreclosed by [Lockheed's] holding [sic] that, without exception, '[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries.'" Id. at 445 (quoting Lockheed, 517 U.S. at 890).

Shortly after Lockheed was decided, the Third Circuit relied on the Supreme Court's reference to "plan sponsors" to rule that the Court's decision applies to multi-employer plans. See Walling v. Brady, 125 F.3d 114 (3d Cir. 1997). " Lockheed speaks of 'plan sponsors,' a term that applies to both single-employer sponsors and multi-employer sponsors under ERISA, and the opinion lacks any hint that single- and multi-employer plans should be analyzed differently." Id. at 117. The Third Circuit also quoted ERISA's definition of "plan sponsor":

The term "plan sponsor" means (i) the employer in the case of an employee benefit plan established or maintained by a single employer . . . or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

Id. at 118 (quoting 29 U.S.C.A. § 1002(16)(B)).

Thereafter, with the benefit of Lockheed Corp. and Hughes Aircraft, the District of Columbia Circuit reached the same conclusion. See Hartline v. Sheet Metal Workers' National Pension Fund, 286 F.3d 598, 599 (D.C. Cir. 2002). "The Supreme Court made it clear in [Curtiss-Wright, Lockheed, and Hughes Aircraft] that employers and plan sponsors do not act in a fiduciary capacity when they modify, adopt or amend plans. Nothing in the Supreme Court's decisions or ERISA itself creates an exemption for multiemployer pension plans." Id.

Even before the three Supreme Court decisions, the Sixth Circuit had abandoned dictum in Musto, 861 F.2d at 912, indicating that trustees amending a multi-employer plan act as fiduciaries, and ruled that "amendment of multi-employer plans does not differ from amendment of single-employer plans." Pope v. Central States Southeast and Southwest Areas Health and Welfare Fund, 27 F.3d 211, 213 (6th Cir. 1994).

Closer to home, three district courts within the Second Circuit have either questioned or disregarded the continuing validity of our

-10-

opinions in Chambless and Siskind in light of the Supreme Court's decisions.  In 2005, Judge Hurd, in the Northern District of New York, stated that "the invalidation of . . . Musto . . . leaves the view in Siskind and Chambless without any support in the post-Hughes Aircraft era." Fuchs v. Allen, 363 F. Supp. 2d 407, 416 (N.D.N.Y. 2005).[4]  In that same year, Judge Garaufis, in the Eastern District of New York, ruled that the holdings in Chambless and Siskind cannot survive Lockheed and Hughes Aircraft. See Cement and Concrete Workers District Council Pension Fund v. Ulico Casualty Co., 387 F. Supp. 2d 175, 186 (E.D.N.Y. 2005), aff'd on other grounds , 199 F. App'x 29 (2d Cir. 2006).  Last year, Judge Gardephe, in the Southern District of New York, stated flatly that Chambless and Siskind "have been overruled." Gannon v. NYSA-ILA Pension Trust Fund and Plan, No. 09-CV-10368, 2011 WL 868713, at *8 (S.D.N.Y. Mar. 11, 2011).

Although the Supreme Court's opinions in Curtiss-Wright, Lockheed, and Hughes Aircraft all involved single-employer plans, we agree with the Third, Sixth, and District of Columbia Circuits that the Court's language analyzing fiduciary duties under ERISA is equally applicable to multi-employer plans.  Although it is a somewhat close question whether that language was sufficiently related to the Court's ultimate rulings to be considered as  holdings or only highly persuasive dicta, we now regard it as ample justification to deem it to have abrogated Chambless and Siskind with respect to multi-employer

_____

[4]Judge Hurd noted, but disagreed with, the opinion of Judge Curtin, in the Western District of New York, Burke v. Bodewes, 250 F. Supp. 2d 262, 270 (W.D.N.Y. 2003), adhering to Chambless and Siskind after the Supreme Court decisions. See Fuchs, 363 F. Supp. 2d at 416.

-11-

plans.  Moreover, in the absence of compelling reasons to the contrary,  maintaining a circuit split on the issue of trustee liability as fiduciaries for amending multi-employer plans is inadvisable.  We therefore conclude that Counts I through V were subject to dismissal because the Defendants were not acting as fiduciaries when they amended the plans.

II. Whether Counts VII-IX Are Time-Barred

ERISA's statute of limitations, set out in the margin,[5] provides three alternative limitations periods, depending on the underlying factual circumstances.  The first period, applicable in the absence of any special circumstances, is six years from the date of the last action that was part of the breach.  The second period is three years, applicable and beginning when a putative plaintiff has "actual knowledge" of the violation, defined as "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." Caputo v. Pfizer, Inc.,

---

[5]Section 1113 provides:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

267 F.3d 181, 193 (2d Cir. 2001).[6] However, "constructive knowledge" of the breach does not trigger the three-year period. See id. at 194. The third period is six years, applicable where a complaint alleges fraud or concealment with the requisite particularity. Relevant to the pending appeal, this six year period is tolled until the plaintiff discovers, or should with reasonable diligence have discovered, the breach. See id. at 190. To successfully plead this "fraud or concealment exception," a complaint must allege that a fiduciary either "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." Id. Moreover, these allegations must be stated "with particularity," Fed. R. Civ. P. 9(b), requiring a plaintiff to "specify the time, place, speaker, and content of the alleged misrepresentations," as well as "how the misrepresentations were fraudulent" and "those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Id. at 191 (internal textual alterations, quotation marks, and citations omitted).

The issue as to whether Counts VII-IX could be dismissed on motion under Rule 12(b)(6) concerns application of the "fraud or concealment" exception of Section 1113(2). Count VII alleged Santo Scrufari's improper "weighting" of benefits between late 1992–1993 and

_____

[6]Of course, the three-year limitations period may not extend the viability of claims beyond the outer limit of six years specified in section 1113(1).

1996. Counts VIII and IX alleged that Scrufari and his son stole money from the Welfare Fund and concealed their actions by fraudulently labeling withdrawals "Scholarship" or "Health Care" benefits. Although Judge Curtin was satisfied that the Plaintiffs had adequately pleaded fraud or concealment, at least with respect to Counts VII and VIII,[7] he concluded, taking judicial notice of the LaScala case, that they knew or should have known of Santo Scrufari's activities well in advance of June 26, 2003, six years prior to the commencement of this suit.

We think that conclusion could not properly be reached at the pleading stage. It is true that the LaScala case concerned misconduct similar to what Scrufari is alleged to have done in this case. However, the prior litigation concerned misconduct occurring no later than October 1992, a period prior to the time during which the misconduct at issue in this case is alleged to have occurred. At most, LaScala creates an issue of fact as to whether the Plaintiffs knew or should have known of Scrufari's activities between 1993 and 1996 based on his activities prior to that time. The resolution of that issue was not proper at the pleading stage. Whether the issue might be resolved on motion for summary judgment after discovery remains to be determined on remand.

**III. Whether the District Court Properly Denied the Motion to Amend**

The Plaintiffs-Appellants assert that the District Court erred in denying leave to amend the Complaint. Normally, leave to amend should

[7]Count IX asserted substantially the same activity as Count VIII, which the District Court found adequately alleged fraud or concealment. Fairly read, the allegations of fraud or concealment in Count VIII apply to Count IX as well.

be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). However, amendment of a complaint becomes significantly more difficult when a plaintiff waits, as the Plaintiffs in this case did, until after judgment has been entered. "[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." National Petrochemical Co. of Iran, 930 F.2d at 244. "The merit of this approach is that '[t]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.'" Id. at 245 (quoting 6 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1489, at 694 (1990)). Here, the District Court properly denied the motion to amend following its denial of the motion for reconsideration.

Because we vacate the District Court's dismissal of several counts, however, we note that the prior judgment will no longer bar future motions for leave to amend with respect to the surviving claims.

Conclusion

For the foregoing reasons, the District Court's dismissal of Counts I–V is affirmed, its dismissal of Counts VII–IX is vacated, and the case is remanded for further proceedings. The cross-appeal is dismissed as unnecessary.